## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. 23-CV-1010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT | ) | |
| OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT HEWITT GOODPASTURE'S  MOTION TO DISMISS

Defendant Hewitt Goodpasture submits the following Memorandum in Support of His Motion to Dismiss and, for the reasons set forth herein, respectfully requests that the Court dismiss plaintiffs Carla and Mr. Davis's claims against him with prejudice.

### Nature of Matter Before the Court

Plaintiffs Carla and Jalen Davis ("Plaintiffs"), proceeding pro se, filed this lawsuit against numerous individuals and entities, claiming deprivation of their rights and conspiracy to interfere with their civil rights under 42 U.S.C. §§ 1983 and 1985. It appears that Plaintiffs' claims revolve around medical care they received and interactions with healthcare providers that they had in the mid-2000s, which they claim resulted in the deprivation of their rights.

As Plaintiffs fail to state any plausible § 1983 or § 1985 claim against Dr. Goodpasture and because the statute of limitations would have run on any claim

Plaintiffs even theoretically could have against Dr. Goodpasture, Dr. Goodpasture asks that the Court dismiss Plaintiffs' claims against him with prejudice.

### Statement of Facts

The following statements of facts, based on the factual allegations of Plaintiffs' Complaint, is submitted and taken to be true for the purposes of Memorandum only.

In August 2002, Carla Davis was pregnant with her in-utero child Mr. Davis and began receiving OB/GYN care from Clyde Wilson Wesbrook, M.D., at Wichita Clinic P.A. (*Id.*) On October 18, 2002, Ms. Davis told Dr. Wesbrook that she wanted to deliver Mr. Davis at St. Joseph Hospital in Wichita, Kansas. (*Id.* at ¶¶ 57, 60; ECF 1-1 at 8.). Wichita Clinic then "allocated [her] health care services to 'Deliver at Wesley Medical Center' . . . ." (ECF 1 at ¶ 61.) Specifically, Plaintiffs allege that Ms. Davis was "forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for January 23, 2003." (*Id.*) When Ms. Davis arrived at Wesley Medical Center, she was placed "in the hands of indigent and research training programs" without her knowledge. (*Id.* at ¶ 62.) Plaintiffs were then incapacitated with a toxic dose of the drug Fentanyl. (*Id.* at ¶ 63.) Mr. Davis was ultimately born on January 23, 2003. (ECF 1 at ¶¶ 61–66; ECF 1-1 at 3.)

While Ms. Davis was incapacitated, she was raped by Anna Stork-Furry. (ECF 1 at ¶ 64.) Tom Yao also stabbed Ms. Davis deeply in her lower back with a needle, causing severe pain. (*Id.* at ¶ 65.) Plaintiffs were also administered toxic doses of antibiotics and Ms. Davis was administered toxic doses of Bupivacaine and

other medications even though these medications were not medically necessary. (*Id.* at ¶ 66.) Plaintiffs allege that Ms. Davis suffered serious injuries as a result of these allege bodily intrusions. (*Id.* at ¶ 67-1.)[1]

On possibly February 4, 2004, but more likely February 4, 2005, an unknown device was placed in Ms. Davis's chest blood vessels without her knowledge and consent at Wesley Medical Center. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7.) In addition, Plaintiffs allege that unspecified public officials refused to give them the results of diagnostic testing, Plaintiffs' medical records are in confidential statute, and Plaintiffs are unable to use their health information for any reason. (ECF 1 at ¶ 67-2; ECF 1-1 at 1; ECF 7.) Plaintiffs allege that they are being denied effective medical treatment and the ability to use their medical records for evidence in an auto accident case and in applying for and/or receiving social security benefits. (ECF 1 at ¶¶ 68-2, 72). Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries resulting therefrom that they claim that they have endured. (*Id.* at ¶ 69.) Based on the documents submitted alongside Plaintiff's Complaint, it appears that Plaintiffs' allegations concern a denial of a request for information from Children's Mercy Hospital that occurred on August 14, 2008, and Wesley Medical Center medical record for Ms. Davis from February 2005 being stamped "CONFIDENTIAL NOT FOR RE-RELEASE." (ECF 1-1 at 1; ECF 8.)

---

[1] Plaintiffs' Complaint appears to repeat and contain two sets of paragraphs 67 and 68. (ECF 1 at p. 8–9.) The first set of paragraphs 67 and 68 are herein referred to as paragraphs 67-1 and 68-1, respectively, and the second set are referred to as paragraphs 67-2 and 68-2, respectively.

In August 2008, unspecified public officials stole the blood of Mr. Davis at Children's Mercy and prevented him from receiving medical treatment. (ECF 1 at ¶ 70.) Plaintiffs appear to allege that there was an attempted abduction of Mr. Davis by "a U.S. Military Social Worker- Michael Dustin ( Korea) [sic]." (*Id.* at ¶ 70.) Plaintiffs allege that Ms. Davis was falsely accused of child abuse, was investigated, and found innocent. (*Id.* at ¶ 71.)

Plaintiffs filed this lawsuit on January 23, 2023, seeking declaratory relief, injunctive relief, and monetary damages for the above-described allegations. (ECF 1 at p. 9.) In Plaintiffs' Complaint and Civil Cover Sheet, they state they are bringing this case under 42 U.S.C. §§ 1983 and 1985. (*Id.* at ¶ 43; ECF 2.) Plaintiffs have brought this case against approximately 40 defendants, including multiple physicians, private and public medical entities, law firms, governmental entities, and past and former government officials. (ECF 1 at ¶¶ 3–42.) One of the defendants is Hewitt Goodpasture, M.D., who Plaintiffs allege was the "2002-2003 President of Medical Society of Sedgwick County during terrorism." (*Id.* at ¶ 33.) Plaintiffs sue Dr. Goodpasture in "his official and individual capacity" but do not allege that the Medical Society of Sedgwick County ("MSSC") is a governmental entity or allege that Dr. Goodpasture is a state actor. (*Id.*) Plaintiffs have also not pleaded any facts showing that MSSC is a governmental entity, performs any governmental function, or acted jointly with any governmental entity.

Besides the paragraph of the Complaint identifying Dr. Goodpasture as the president of MSSC from 2002 through 2003, stating that he is being sued in his

official and individual capacity, and providing an address for service, neither the Complaint nor any other documents filed by Paintiffs reference Dr. Goodpasture or MSSC. (ECF 1 at p. 1–10; ECF 1-1 at 1–14; ECF 7; ECF 8.) Plaintiffs' Complaint and the other documents filed by them also do not identify any acts or omissions on the part of Dr. Goodpasture or MSSC as part of the bases for Plaintiffs' claims. (*Id.*)

## Arguments and Authorities

### I.  Governing Standard

#### A.    Failure to state a claim

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face." Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility." "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth. Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Cory D. Cline v. Anthony R. Russo*, No. 22-CV-4010-JAR-TJJ, 2023 WL 2375107, at *1 (D. Kan. Mar. 6, 2023).

In addition, to state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff and what specific legal right the plaintiff believes the defendant violated. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Complaints in which a plaintiff merely broadly claims that their rights "were violated" or that a defendant "infringed" on the plaintiff's rights are also insufficient. *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2008).

### B.   Rule applicable to pro se parties

"A party proceeding pro se is entitled to a liberal construction of his pleadings. However, a pro se party must follow the same rules of procedure that govern other litigants." *Trammell v. Denning*, No. 12-3152-JAR, 2012 WL 5362968, at *1 (D. Kan. Oct. 31, 2012). Further, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *United States v. Dixon*, No. 5:07-CR-40124-JAR, 2021 WL 3129593, at *2 (D. Kan. July 23, 2021). Finally, a party's pro se status does not operate to toll the statute of limitations. *Van Deelen v. City of Eudora*, No. 96-4040-SAC, 1996 WL 707016, at *3 (D. Kan. Nov. 5, 1996)

## II.   Plaintiffs have not pleaded any facts supporting a plausible § 1983 or § 1985 claim against Dr. Goodpasture.

Plaintiff has sued Dr. Goodpasture in his individual and alleged official capacity. As an initial matter, Plaintiffs have not pleaded any facts showing that Dr. Goodpasture was a governmental official or state actor. Further, although

Plaintiffs have pleaded that Dr. Goodpasture was the president of MSSC from 2002 through 2003, they have not pleaded any facts that show that MSSC was a governmental entity or performed any governmental action that resulted in any injury to Plaintiff. Accordingly, Plaintiffs have failed to state a plausible official capacity suit of any kind against Dr. Goodpasture as they have not pleaded any facts showing that Dr. Goodpasture has any official capacity in which he could be sued, much less that he was acting in an official capacity with regard to the events that form the basis for Plaintiffs' claims.

Plaintiffs have also not pleaded facts sufficient to meet the other requirements of stating a § 1983 or § 1985 claim against Dr. Goodpasture. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

Here, Plaintiffs do not make any factual allegations that Dr. Goodpasture ever deprived them of any rights or that Dr. Goodpasture ever acted under color of state law. Plaintiffs also do not make any factual allegations that Dr. Goodpasture ever engaged in any conspiracy or ever interfered with their civil rights at all. Thus, Plaintiffs have clearly failed to even partially meet the basic requirements of stating a plausible § 1983 or § 1985 claim against Dr. Goodpasture.

Additionally, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). But Plaintiffs' do not identify acts or omissions of Dr. Goodpasture at all in their Complaint, much less state how any alleged act or omission of Dr. Goodpasture has any relation to their claims. Thus, Plaintiffs have also failed to state a plausible § 1983 against Dr. Goodpasture in his individual capacity by failing to allege personal involvement by Dr. Goodpasture in the claimed deprivation of their rights.

Finally, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Again, Plaintiffs have not pleaded any factual allegations indicating that Dr. Goodpasture had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Goodpasture for these reasons as well.

Due to the numerous deficiencies in the factual allegations contained in the Complaint, it is clear that Plaintiffs have failed to even approach stating a plausible § 1983 or § 1985 claim against Dr. Goodpasture or even show that Dr. Goodpasture had any connection with any of the alleged events that form the basis of Plaintiffs' lawsuit. The Court should, therefore, dismiss all of Plaintiffs' claims against Dr. Goodpasture with prejudice.

## III.     The statute of limitations has run on Plaintiffs' claims.

The statute of limitations on 42 U.S.C. §§ 1983 and 1985 claims in Kansas are governed by the two-year limitations period applicable to personal injury claims provided by Kansas statute, K.S.A. 60-513(a)(4). *Gilmore v. Easter*, No. 22-3181-JWL-JPO, 2022 WL 4289549, at *2 (D. Kan. Sept. 16, 2022). "State law also determines any tolling of the limitations period, although federal law may allow for additional tolling in rare circumstances." *Id.* at *10. In response to the global pandemic of COVID-19, the Kansas Supreme Court suspended the running of all statute of limitations in Kansas from March 19, 2020, to April 15, 2021. *Korgan v. Est. of Hansen by & through Cramer*, No. 21-2567-JWB, 2022 WL 4465074, at *1 (D. Kan. Sept. 26, 2022). However, even considering the COVID-related and all other applicable tolling to Plaintiffs' claims, their claims are still time-barred.

### A.     Ms. Davis's claims are barred by the statute of limitation.

When determining when a federal civil rights action accrued, a court must apply federal law. *McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *4 (D. Kan. Sept. 27, 2022). Under federal law, a "civil rights action accrues when

the plaintiff knows or has reason to know of the injury which is the basis of the action. It is not necessary that the plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue." *Abdullah ("Abe") Fattaey v. Kansas State Univ.*, No. 15-9314-JAR-KGG, 2017 WL 347500, at *11 (D. Kan. Jan. 24, 2017).

Here, the alleged events that form the bases of Ms. Davis's claims can be grouped into three timeframes. The first timeframe is August 2002 to January 2003, which encompasses all allegations related to the birth of Mr. Davis and all the medical treatment that Plaintiffs' received in connection with his birth. (ECF 1 at ¶¶ 57, 61–66.) Any injuries Ms. Davis suffered from these alleged events would have been or should have been known to her shortly at the time the events occurred, as she would have been aware of the procedures performed and the effects thereof. Further, the documents filed by Plaintiffs alongside their complaint include pictures of alleged injuries suffered by Ms. Davis. (ECF 1-1 at 13–14.) Assuming the information contained within the pictures is true, these pictures were taken between May 3, 2007, and April 29, 2013. (*Id.* at 14.) Accordingly, at the latest, Ms. Davis was indisputably aware that she suffered some injury by May 3, 2007. Thus, the statute of limitations on her claims related to events occurring between August 2002 and January 2003, would have run on May 3, 2009, at the latest.

The second set of events occurred in or around February 2005, when an unknown device was allegedly placed in Ms. Davis's chest blood vessels without her knowledge and consent. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7; ECF 8.) Again,

there are no facts indicating that she was unaware of the placement of the device without her consent, which itself would be an injury, at the tim it was placed or shortly thereafter. Therefore, the statute of limitations for claims arising from the alleged events that occurred in or around February 2005 would have run in February 2007 or shortly thereafter.

The final set of events occurred in or around August 2008, when there was an alleged attempt to abduct Mr. Davis, his blood was allegedly taken, and Children's Mercy declined to provide information in response to a request for information from Ms. Davis. (ECF 1 at ¶ 70; ECF 1-1 at 1.) From the face of these allegations, it clear that Ms. Davis knew or should have known of the alleged abduction attempt and her request for information being declined and any injuries resulting therefrom at the time or shortly after these events occurred. Plaintiffs have also again not pleaded any facts indicating that they were unaware of these events and any injuries therefrom at or near the time they occurred. Accordingly, the limitations period Ms. Davis's claims related to the events that allegedly occurred in or around August 2008 would have ended in August 2010 or shortly thereafter.

As the limitations period for any of Ms. Davis's claims related to the allegations contained in Plaintiffs' Complaint would have expired in 2010, at the latest, her claims in this case are untimely absent any tolling. Plaintiffs have not pleaded any facts supporting the tolling of the statute of limitations as to Ms. Davis's claims. Moreover. as COVID-related tolling did not begin until March 2020, such tolling is also not applicable to Ms. Davis's claims. Therefore, Ms. Davis's

claims are time-barred as the limitations period had expired long before Plaintiffs filed their Complaint on January 23, 2023. Accordingly, Ms. Davis's claims should be dismissed with prejudice because her claims are barred by the statute of limitations.

**B.    Mr. Davis's claims are barred by the statute of limitation.**

As part of the federal discovery rule regarding the accrual of claims, the knowledge of a claim or injury of a parent is imputed to a minor. *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 274 (3d Cir. 2006); *see also Rice v. U.S.*, No. 96-5175, 1997 WL 353009, at *3 n.6 (10th Cir. 1997). Although this rule usually comes into play in claims under the federal tort claims act, the rule also applies to determining the date that Plaintiffs' claims accrued because the accrual date is controlled by the federal "common law" discovery rule just as the accrual date of FTCA claims are. *See Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) (generally, federal discovery rule applies equally to both FTCA and § 1983 claims).

Because Ms. Davis's knowledge regarding Plaintiffs' claims and injuries is imputed to Mr. Davis, their claims accrue on the same date. Thus, the discussion above regarding the accrual of Ms. Davis's claims is equally applicable to the accrual of Mr. Davis's claims, and the latest that any of his claims would have accrued would have been in August 2008.

However, unlike Ms. Davis, additional tolling considerations must be given to Mr. Davis's claims as he did not turn eighteen until January 23, 2021. As the forum's state's law governs the tolling of federal civil rights claims, the Kansas

statute tolling the statute of limitations period while a plaintiff is under a legal disability, K.S.A. 60-515(a), applies. In relevant part, this statute states:

> [I]f any person entitled to bring an action, . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, . . . such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).

Pursuant to this statute, the one-year period for Mr. Davis to file his claims after turning eighteen would have begun to run, under normal circumstances, on January 23, 2021, and elapsed on January 23, 2022, exactly one year before Plaintiffs filed suit. *See Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 6037380, at *6 (D. Kan. Nov. 14, 2019). Further, even assuming that the COVID-related tolling would have applied to this one-year limitation period, the one-year period would have begun to run on April 15, 2021, and ended on April 15, 2022, still well-before Plaintiffs filed suit.

Accordingly, even assuming all possible tolling of the statute of limitations on Mr. Davis's claims, he still did not file suit on his claims within the applicable limitations periods. Mr. Davis's claims against Dr. Goodpasture should, therefore, be dismissed with prejudice for being time-barred.

## IV. Plaintiffs' claims against Dr. Goodpasture should be dismissed with prejudice.

"Even though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment where it is obvious that the

plaintiff cannot prevail on the facts she has alleged and it would be futile to give her an opportunity to amend." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation omitted).

Here, Plaintiffs have not provided any indication that they can prevail against Dr. Goodpasture on any claim based on any facts they have alleged or that allowing them leave to amend would be anything but futile. First, Plaintiffs have not provided any indication that any of the elements of a plausible § 1983 or § 1985 claim against Dr. Goodpasture are even partially present. In fact, they have not provided even a shred of a reason to believe that Dr. Goodpasture had any involvement with any of the incidents that form the bases of their claims. Thus, Plaintiffs' claims against Dr. Goodpasture should be dismissed with prejudice as it is patently obvious that they do not even have the beginning of a viable claim against Dr. Goodpasture. *See Allen v. Adams*, No. 21-1221-JAR-KGG, 2021 WL 5279642, at *3 (D. Kan. Nov. 12, 2021); *Herlocker v. Loffswold*, No. 16-2300-JAR-TJJ, 2016 WL 5851732, at *3 (D. Kan. Oct. 6, 2016).

Further, even if Plaintiffs could plead facts generally supporting the substantive legal elements of their claims, their claims would still clearly be time-barred as the statute of limitations on Ms. Davis's claims ran, at the latest, in or around August 2010, and the statute of limitations on Mr. Davis's claims ran, at the latest, on April 15, 2022. As Plaintiffs' claims, even if otherwise substantively viable, would be time-barred, their claims against Dr. Goodpasture should be

dismissed with prejudice. *See Wilson v. Reid*, 781 F. App'x 789, 793 (10th Cir. 2019); *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014).

Because Plaintiffs clearly do not have any plausible claims against Dr. Goodpasture and, even if they did have such a claim, the claim would be time-barred, the Court should not grant Plaintiffs leave to amend their claims against Dr. Goodpasture but should dismiss their claims against him with prejudice.

## Conclusion

For the reasons stated above, Dr. Goodpasture respectfully requests that the Court grant his Motion to dismiss, dismiss all of Plaintiffs' claims against him with prejudice, and for such other and further relief that the Court finds to be just and equitable.

Respectfully Submitted,

/s/ Andrew L. Foulston
Katy E. Tompkins, #25581
Andrew L. Foulston, #27688
MCDONALD TINKER PA
300 West Douglas Ave., Ste. 500
Wichita, Kansas 67202
T: (316) 263-5851 | F: (316) 263-4677
E: ktompkins@mcdonaldtinker.com
E: afoulston@mcdonaldtinker.com
*Attorneys for Defendant Hewitt Goodpasture*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 7th day of March 2023, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT HEWITT GOODPASTURE'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

A copy is also being sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

/s/ Andrew L. Foulston
Andrew L. Foulston, #27688