# Chapter 3:
# LOCAL GOVERNMENT POWERS: POLICE POWER AND HOME RULE

§3.01   I. INTRODUCTION

A.   OVERVIEW OF CHAPTER

This chapter deals primarily with the constitutional home rule powers of cities and the statutory home rule powers of counties. The Kansas Supreme Court very recently reaffirmed the fact that cities have broad home rule powers granted directly by the people of the State of Kansas when they approved the city home rule constitutional amendment in November of 1960. See *Kline v Unified Government of Wyandotte County/Kansas City, Kansas*, 277 Kan. 516, 85 P.3d 1237 (2004). The apparent clarity of the rules for interpreting home rule powers of cities reaffirmed in Kline in March 2004, were muddled once again two months later in the May 14th decision of *City of Topeka v. Board of Shawnee County Commissioners*, 277 Kan. 874 ,89 P.3d 924 (2004).

On the surface of what was at stake in the *Kline* case was whether cities under home rule could exempt themselves from a state statutory prohibition against the Sunday sales of packaged liquor. The Sunday sales prohibition is a part of the Kansas Liquor Control Act which has several sections that do not apply uniformly to all cities. What really was at stake in *Kline* was whether the court was going to further narrow the broad constitutional home rule powers of cities by court decision—a path the court started down in earnest in 2001 with its decision in *Bigs v City of Wichita*, 271 Kan. 455, 23 P.3d 855 (2001). Fortunately for cities (and counties), the *Kline* court upheld the Kansas City charter ordinance allowing Sunday sales of liquor and in the process overruled some of the faulty reasoning (how much is unclear) of the *Bigs* case.

The refreshing clarity of Kline hopefully will overshadow the *City of Topeka* case, decided two months later. The issue in the case was over the propriety of the county charter resolution opting the county out of the admittedly non-uniform planning and zoning laws but only for one ad hoc plat decision. The county charter resolution approved a subdivision plat in the three mile ring around the city which the city had rejected earlier. The case unfortunately reaffirmed certain erroneous rules regarding home rule enunciated in earlier cases which will be explained in more detail later. The *Kline* and the *City of Topeka* cases reflect the possibility that the Kansas Supreme Court now has developed two lines of cases - one line which broadly interprets home rule powers of cities and counties and a second line of cases which narrowly interprets the same power. Hopefully, this is not the case.

See for example, the case of *General Building Contractors L.L.C. v Board of Shawnee County Commissioners*, 275 Kan. 525, 66 P.3d 873 (2003). The court found that a Kansas county has the power under home rule to exercise eminent domain rights and condemn land for purposes of industrial and economic development. This case is counterbalanced by *David v. Norton County*, 277 Kan.753,89 P.3d 893 (2004), where the court determined a county by ordinary home rule resolution could not enact more stringent regulations than state law already provided dealing with confined animal feeding operations since the county home rule law itself specifically prohibited such action. In truth, the holding in the *Norton County* case is much easier to understand than the *City of Topeka* decision.

The chapter begins first with a discussion of the nature of local governments and their role of dependency in reference to state government absent a grant of home rule powers. Next is a discussion of the police power, the power to regulate and to govern which has its source in the state and is delegated to local governments by statute or directly granted by the people of a state by constitutional home rule. The vast majority of the chapter is spent explaining various aspects of city and county home rule powers.

The subject of city and county home rule is also discussed in other chapters in this book. Note in particular Chapter 4 dealing with home rule and planning and zoning powers of cities and counties and Chapter 8 dealing with home rule and the taxing powers of cities and counties.

§3.02   B.   LOCAL GOVERNMENTS AND THE STATE

1.   A RELATIONSHIP OF DEPENDENCY – DILLON'S RULE PREVIEW

All local units of government must look to the state constitution or state statutes for the source of their powers including the power of home rule. Courts, for the most part, have rejected the theory that local governments enjoy any inherent right to local self-government. See Reynolds, *Local Government Law 2d Ed.* (West, 2001), pp. 76-84. Under our system of federalism states are sovereign not their local governments.

Local governments are considered creatures of the state as well as subdivisions of the state and as such are dependent upon the state for their existence, structure and scope of powers. See *Hunter v Pittsburgh*, 207 U.S. 161, 28 S.Ct 40, 52 L.Ed 151

fails to do so within a reasonable time and in a diligent manner, the city is authorized under K.S.A. 12-1753 to remove or demolish it at the owner's expense. The city had condemned the Tankersley Hotel and the owner-trust sued to enjoin the city. The court said that the city proceeding with the condemnation despite efforts by the owner to repair the property was arbitrary.

For discussion of police power in reference to land use regulations and determinations when a taking occurs, see Chapter 4 dealing with planning and zoning issues and Chapter 10 dealing with eminent domain powers.

§3.08   D. TEST OF REASONABLENESS — OTHER TESTS

Any exercise of police power is subject to the test of reasonableness. Further, no police power ordinance or resolution may impair or violate constitutional personal rights or property rights. In addition, it is said that police power regulations must not be oppressive, unreasonable or unnecessarily interfere with natural or common rights. See McQuillan, *Municipal Corporations*, 3rd Ed. §24.52 and see *City of Prairie Village v Hogan*, 253 Kan. 423, 855 P.2d 949 (1993), where the court said that an ordinance prohibiting picketing before or about a church must be construed narrowly to prohibit picketing solely in front of a church. But see *City of Wichita v Lucero*, 255 Kan. 437, 874 P.2d 1144 (1994) where the court upheld a city ordinance which provided criminal penalties for interference with the operations of a lawful business. The defendant had been arrested while participating in a pro-life demonstration in front of an abortion clinic. See *City of Wichita v Edwards*, 23 K.A. 2d 962, 939 P.2d 942 (1997) where the court upheld an ethnic intimidation or bias ordinance by construing it to apply only to fighting words. See *Luna v City of Ulysses*, 28 K.A. 2d 413, 17 P.3d 940 (2000) where the court found a noise ordinance unconstitutional since it lacked objective standards for determining excessive noise.

The test of reasonableness is the most commonly discussed test when a police power regulation is challenged. However, a more stringent test may be used if a fundamental constitutional right is affected by the regulation. See *Schleifer v City of Charlottesville*, 159 F.3d 843 (4th Cir.) (1998), where the court upheld a city juvenile curfew ordinance using a "substantially related to an important governmental interest" test. The following is a discussion of some of the more typical areas where police power regulation is exercised by cities and counties. Space does not permit a full exposition of the police power.

§3.09   E.   BUSINESS REGULATION AND LICENSURE

1.   OVERVIEW

A city's ability to regulate business, trades and occupations is well recognized as being within the scope of the police power. For a general discussion of the ability of the state to regulate business, see *State ex rel Stephan v Lane*, 228 Kan. 379, 384, 614 P.2d 987 (1980). The Kansas courts have drawn a distinction



Exhibit L

54–68